**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| PATRICIA McCOY, | : | |
| Plaintiff, | : | Case No. 3:06CV335 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.      INTRODUCTION**

Plaintiff Patricia McCoy suffers from multiple medical problems including, to name a few, pain and muscle spasms in her back, asthma, chronic obstructive pulmonary disease, and depression.  Her health problems caused her to stop working on November 1, 2000.  She then turned to the Social Security Administration for financial assistance by applying for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

After initial denials of her benefits applications, her case proceeded to a hearing

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

before Administrative Law Judge (ALJ) Elving L. Torres in Fort Meyers, Florida. (Tr. 11). In a subsequent written decision, ALJ Torres concluded that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 11-18). The ALJ's non-disability determination and resulting denial of benefits became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #7), Plaintiff's Reply (Doc. #8), the administrative record, and the record as a whole.

Plaintiff seeks, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. ADDITIONAL BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (forty nine) placed her in the category of a "younger person" for purposes of resolving her benefits applications. *See* 20 C.F.R. §404.1563(c); *see also* Tr. 28, 61. She attended a special education program through the eighth grade (Tr. 77). This constitutes a "limited education" for DIB/SSI purposes. 20 C.F.R. § 404.1564(b). Plaintiff's past employment has included work as a cashier, waitress, table busser, cook, cleaner, and taxi driver. (Tr. 61-68, 72).

Plaintiff explains in her Statement of Errors that her primary medical problem relates to her breathing impairments. (Doc. #6 at 3). She suffers from both asthma and

chronic obstructive pulmonary disease (COPD).  *Id*. (and record citations therein).  She also suffers from carpal tunnel syndrome of moderate severity, as diagnosed by a physician in August 2002 based on EMG testing.  (Tr. 316).  Plaintiff testified during the ALJ's hearing that she has carpal tunnel syndrome in her right hand that is severe and that causes numbness when she lifts a gallon of milk or a pen, causing her "to drop stuff." (Tr. 398).[2]  Several months later, in January 2003, another physician recommended, "carpel tunnel release" surgery on her right hand.  (Tr. 278).

A state agency physician, Dr. Del Pizzo, examined Plaintiff on August 8, 2001. (Tr. 151-54).  According to Dr. Del Pizzo, Plaintiff's lungs produced, "decreased breath sounds, no signs of cyanosis or clubbing, but definitive dyspnea on minimal exertion (20 feet)."  (Tr. 151).  Examination of her cervical spine revealed mid-line tenderness at C5-6, and "anterior flexion with minimal ROM [range of motion] decrease."  (Tr. 151).  Dr. Del Pizzo acknowledged Plaintiff's reports of long-term low back pain with radiation into her right leg but further noted, "Low back pain never investigated...."  (Tr. 151).  He also wrote, "There are no signs of joint hypertrophy, inflammation, or deformity except for C-Spine vertebral compression syndrome."  (Tr. 151).

Dr. Del Pizzo diagnosed bronchial asthma, COPD, Cervical Spine vertebral compression syndrome, lumbo-sacral spine "DDD" (degenerative disc disease), left eye

---

[2] A reasonable estimate weighs one gallon of milk at approximately 8.5 pounds or slightly more than one gallon of water (≈8.33 lbs.).  *See* http//:www.wikianswers.com/Q/; *see also* http//:www.unc.edu/~rowlett/units/dictG.html.

cataract, and generalized anxiety disorder. (Tr. 152). Describing his conclusions and assessments, Dr. Del Pizzo wrote:

> 46 yr. old white female w/ long history of bronchial asthma w/ COPD overtones, which has been poorly controlled due to poor patient drug compliance. Concomitant history of low back pain for past twenty years w/o muscle weakness....

(Tr. 152).

Dr. Holifield reviewed the record in September 2001 at the request of the state agency. (Tr. 165-72). He checked boxes consistent with the conclusion that Plaintiff could perform light exertional work[3] as long as she avoided concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 166, 169). Dr. Holifield noted briefly, "symptoms/limitations appear credible..." (Tr. 170).

In February 2002 Dr. Hilda Tung reviewed the record for the state agency. (Tr. 173-80). She, like Dr. Holifield, found Plaintiff limited to light exertional work with the need to avoid concentrated exposure to fumes, odors, gas, etc. *Id*.

Also in February 2002, a state agency psychologist, Dr. Highsmith, examined Plaintiff and assessed her mental work abilities. (Tr. 181-84). He diagnosed Plaintiff with Major Depressive Disorder, severe and low average to borderline intelligence. (Tr. 184). Dr. Highsmith found no evidence that Plaintiff was malingering, and he opined, "She has had multiple medical and psychiatric problems and should be receiving

---

[3] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

treatment.... She should be on an antidepressant as she is presently living a rather vegetative life." (Tr. 184). Dr. Highsmith assessed her GAF at 45, further emphasizing, in part, "GAF ... is NOT TO BE CONSIDERED." (Tr 184)(emphasis in original).[4] In light of the fact that Dr. Highsmith was evaluating Plaintiff at the request of a state agency, he apparently did not want his low assessment of Plaintiff's GAF to impact the determination of whether she was under a disability. *See* Tr. 184. This, however, is not crystal clear since the note lacks a supporting explanation.

In March 2002, psychologist Dr. Conger reviewed the record for the state agency and completed a psychiatric review technique form. (Tr. 185-197). He checked boxes indicating his opinions that Plaintiff's impairments were not severe, that she suffered from depressive disorder not otherwise specified, and that she had only mild functional limitations on her activities of daily living with no episodes of decompensation. (Tr. 185, 188, 195). Dr. Conger described his opinions as follows:

> The claimant is limited by her physical condition and pain to some extent but she acknowledged the mental ability to drive and to perform other routine ADL [activities of daily living]. Although she may experience some depression related to her life circumstances, she displays an overall adequate mental status and can relate effectively. She does have a history of academic problems but her adaptive functioning level would rule out a listing level impairment based on intellectual issues.... She appears to be fully functional from a mental perspective.

---

[4] GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

5

(Tr. 197).

During the ALJ's hearing Plaintiff testified that her asthma and low back pain were the primary problems preventing her from working. (Tr 392). During each day, she often used an inhaler and a breathing machine (nebulizer). (Tr. 396-97). She needed the nebulizer, "To clear up my lungs because between the heat and the humidity when it gets hot, my lungs will close up. When it gets cold, my lungs will close up, or if there is something in bloom, they will close up plus my sinuses." (Tr. 396). Activities can aggravate her asthma. For example, she cannot walk and carry the garbage to the curb without stopping half-way to catch her breath. (Tr. 398). At the time of the ALJ's hearing, Plaintiff smoked one pack of cigarettes about every two days. She knew she should quit smoking and did so at one point for about six months. She started smoking again when her mother died in April 2003. (Tr. 393-94).

Plaintiff explains that she could not perform her cashier job due to her lower back pain, right hand carpal tunnel syndrome, and bad swelling in her feet and ankles. (Tr. 400). Her back pain is severely limiting. She testified that she avoids bending since even just bending over to make the bed can "hurt real bad." (Tr. 397). When her back pain is bad, she must lay flat on the floor for three to four hours to obtain relief. *Id*. Sitting in one position also hurts and burns across her lower back. (Tr. 399). If she had to stand in line at the grocery store for one-half hour or forty-five minutes, she could not do it. (Tr. 399-400). When asked if she could work as a waitress, she answered, "No. Carrying a heavy load of trays. Some of them trays can get up to 20 to 30 pounds per tray." (Tr.

6

400).

Plaintiff took Prozac for depression; it only helped her a little.  (Tr. 394).  Once a month for six or seven months, Plaintiff saw a psychiatrist at a clinic in Florida.  (Tr. 394).  Although she remained on medication, she stopped seeing the psychiatrist "because they said they couldn't afford it."  (Tr. 394).

### III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the application from (1) performing his or her past job as well as, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 23-31; *see also* 20 C.F.R.

§§404.1520(a)(4), 416.920(a)(4).[5]  Although a dispositive finding at any step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ determined at Step 2 that Plaintiff has several severe physical impairments:  asthma with COPD, lumbosacral degenerative disc disease, and cervical spine compression syndrome without nerve root involvement or a herniated disc. (Tr. 17).  The ALJ declined to classify Plaintiff's mental impairment as severe. (Tr. 13).

At Step 3 the ALJ found no listing-level impairment. (Tr. 17).

The ALJ's Step-4 assessment of Plaintiff's Residual Functional Capacity

---

[5] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding and equally applicable SSI Regulations. *See Colvin*, 475 F.3d at 730.

assessment described her as able to perform up to medium exertional work with restrictions due to breathing impairments – "she should avoid concentrated exposure to noxious smoke, dust, fumes, and gases and working in poorly ventilated areas, and should avoid concentrated exposure to extreme temperatures." (Tr. 17). Based on this RFC for a limited range of medium work, and the ALJ's findings throughout Steps 1 through 4 of the sequential evaluation, he concluded that Plaintiff could perform her past relevant work as a cashier, waitress, busser, dishwasher, and restaurant cook. (Tr. 17). In light of this dipositive finding, the ALJ did not reach Step 5 of the sequential analysis. He instead stopped at Step 4, finding Plaintiff not under a disability and thus not eligible to receive DIB or SSI. (Tr. 17-18).

**IV.    JUDICIAL REVIEW**

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). The Court's

agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to follow and apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Indeed, through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ's failure to apply the correct legal criteria was harmless, the decision "should be affirmed." *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V.    DISCUSSION

Plaintiff contends that substantial evidence does not support the ALJ's finding that

she could perform medium exertional work where even the state agency physicians, whose opinions the ALJ gave substantial weight, limited her to light work.  Plaintiff emphasizes that the ALJ's finding that she can perform medium exertional work is not supported by ***any*** evidence.

The Regulations define "residual functional capacity" as "the most [the claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).  If the claimant retains the residual functional capacity to perform their past relevant work he or she is not under a disability.  20 C.F.R.  §404.1520(a)(4)(iv), (f).  The Regulations place final responsibility on the ALJ  to determine a claimant's residual functional capacity.  20 C.F.R. §404.1527(e)(2).  As a result, a medical source opinion that describes a specific residual functional capacity is not determinative, although the ALJ considers such opinions, *id*., along with "all the relevant evidence in [the] case record" when assessing residual functional capacity.  20 C.F.R. §404.1545(a)(1) (citation omitted).

The Commissioner acknowledges that no medical source opinion of record concluded that Plaintiff could perform medium exertional work as the ALJ found.  (Doc. #7 at 9).  Yet, in light of the Regulations just discussed, a precise match between the ALJ's residual functional capacity assessment and a medical source opinion of record is not required.

The question, then, is whether substantial evidence supports the ALJ's assessment of Plaintiff's Residual Functional Capacity.  A review of the administrative record, and the parties' respective Memoranda, does not reveal the presence of any evidence in

support of the ALJ's conclusion that Plaintiff could perform the lifting requirements of medium work.  That is, the record is devoid of evidence indicating Plaintiff can lift up to fifty pounds at a time or frequently lift or carry objects up to twenty-five pounds.  20 C.F.R. §404.1567(c). In addition, the ALJ's decision does not identify such evidence.  *See* Tr. 11-18.  Consequently, no evidence, let alone substantial evidence, supports the ALJ's assessment of Plaintiff's residual functional capacity at a limited range of medium work.

The Commissioner attempts to negate this problem by continuing the sequential evaluation to Step 5.  *See* Doc. #7 at 9-12.  Setting aside a potential problem – that the ALJ never reached Step 5 based on a wholly unsupported Step 4 finding – the Commissioner presents what is essentially a harmless error analysis (although not characterizes as such by the Commissioner).  *See id*.  The Commissioner maintains that the vocational expert (VE) identified many jobs available to a hypothetical person with Plaintiff's ability to perform a limited range of light work.  This certainly suggests harmlessness because the state agency medical sources' opinions, if properly credited, support the conclusion that Plaintiff could perform a limited range of light work.  Combining this work ability at Step 5 with the VE's testimony would indicate the presence of evidence sufficient in the record to establish the existence of many jobs Plaintiff could perform.  Such a conclusion at Step 5 would further dictate a non-disability conclusion leaving the ALJ's Step-4 error harmless.

Yet, a problem remains because Plaintiff also points to evidence indicating she can perform only a limited range of sedentary work.  *See* Doc. #8 at 1-2 (and record citations

12

therein).  The VE's testimony does not assist the Commissioner with this low range of work ability, because the VE did not testify about a hypothetical person with Plaintiff's ability to perform only a limited range of light work.  *See* Tr. 403-08.  Without such testimony, the record lacks evidence sufficient to support the conclusion that the ALJ's error was harmless, or that a remand for further proceedings would be futile.

Accordingly, Plaintiff's challenges to the ALJ's assessment of her residual functional capacity are well taken.

Turning briefly to Plaintiff's next contentions, she asserts that the ALJ erred at Step 2 failing to find that her mental impairments and her carpal tunnel syndrome constituted severe impairments.  The Commissioner contends that the ALJ did not err at Step 2, and regardless of any such error, the ALJ properly considered the combination of Plaintiff's severe and non-severe impairments at Steps 3 and 4.  The parties' contentions on these issues do not warrant an in-depth discussion.  The ALJ's decision does not indicate either that he applied the correct *de minimis* legal criteria at Step 2, *see Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), or that he actually considered the combination of Plaintiff's non-severe and severe impairments at Steps 3 and 4 of the sequential analysis.  Instead, the ALJ merely considered the combination of severe and non-severe impairments in a conclusory manner.  *See* Tr. 13-16.  An ALJ's conclusory statements that he considered the combined impact of a claimant's impairments is insufficient when "there was, in reality, no combined treatment in the ALJ's subjective symptom analysis or elsewhere."  *Blankenship v. Bowen*, 874 F.2d 1116, 1123-24 (6th Cir. 1992).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## VI.     REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to re-evaluate Plaintiff's disability claims under the five-step sequential evaluation mandated by the Regulations and case law – including, but not limited, to a re-evaluation of Plaintiff's impairments at Step 2 and a re-assessment of Plaintiff's residual functional capacity – and to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Patricia McCoy was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

February 11, 2008

                                             s/ Sharon L. Ovington
                                               Sharon L. Ovington
                                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).